**Slip Op. 04-1**

UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|  |  |  |
|---|---|---|
| | : | |
| INTERNATIONAL TRADING CO., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Before: WALLACH, Judge |
| | : | Court No.: 98-08-02658 |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | **PUBLIC VERSION** |
| | : | |
| _____ | : | |

[Plaintiff's Motion for Summary Judgment is Granted; Defendant's Cross-Motion for Summary Judgment is Denied]

Decided: January 2, 2004

Rode & Qualey (R. Brian Burke and William J. Maloney), for Plaintiff.

Peter D. Keisler, Assistant Attorney General, Civil Division, United States Department of Justice; Barbara S. Williams, Acting Attorney in Charge, International Trade Field Office; James A. Curley, Attorney, Commercial Litigation Branch, Civil Division; Edward N. Maurer, Office of Assistant Chief Counsel, United States Customs Service, Of Counsel; Dean A. Pinkert, Office of Chief Counsel for Import Administration, United States Department of Commerce, Of Counsel, for Defendant.

**OPINION**

**WALLACH, Judge:**

**I**
**INTRODUCTION**

This action comes before the court on Plaintiff International Trading Co.'s ("Int'l Trading") Motion for Summary Judgment ("Plaintiff's Motion") and Defendant's Cross-Motion for Summary Judgment ("Defendant's Cross Motion"). Plaintiff is an importer of shop towels from Bangladesh who seeks a refund of the increased antidumping duty applied by the United

1

States Customs Service ("Customs")[1] plus the accrued interest paid on its entry. Plaintiff argues that deemed liquidation occurred six months after the Federal Register notice, which was prior to the date on which Customs actually liquidated its entry. Defendant claims that Customs correctly applied the dumping margin and liquidated Plaintiff's entry and that there was no deemed liquidation. The court has jurisdiction pursuant to 28 U.S.C. § 1581(a). For the reasons set forth below, the court grants summary judgment to Plaintiff.

## II
## BACKGROUND

This case is similar in all material respects to the action that was the subject of this court's decision in Int'l Trading Co. v. United States, 110 F. Supp. 2d 977 (CIT 2000) ("Int'l Trading I , aff'd in Int'l Trading Co. v. United States, 281 F.3d 1268 (Fed. Cir. 2002) ("Int'l Trading II , reh'g denied, 2002 U.S. App. LEXIS 11482, except that the entry of shop towels covered by this case was made on or about March 3, 1994, approximately one month later than the last entry covered by Int'l Trading II. Thus, this entry falls within the period covered by the third administrative review of the antidumping order against shop towels from Bangladesh, rather than the period covered by the second administrative review.

Commerce initiated the third administrative review of shop towels from Bangladesh by notice published in the Federal Register on April 14, 1995, Initiation of Antidumping and Countervailing Duty Administrative Reviews, 60 Fed. Reg. 19,017 (Apr. 14, 1995), and liquidation of Int'l Trading's entry was suspended pursuant to 19 U.S.C. § 1673(d). The entries

---

[1]The United States Customs Service was renamed the United States Bureau of Customs and Border Protection, effective March 1, 2003. See Homeland Security Act of 2002, Pub. L. 107-296, § 1502, 116 Stat. 2135, 2308-09 (2002); Reorganization Plan for the Department of Homeland Security, H.R. Doc. No. 108-32 (2003).

covered by the third review are subject to the 1994 amendments under the Uruguay Round Agreements Act ("URAA"); those covered by the second review were not. URAA, Pub. L. No. 103-465, 108 Stat. 4809 (1994); See also Torrington Co. v. United States, 68 F.3d 1347, 1352 (Fed. Cir. 1995).

In Int'l Trading II, the Federal Circuit affirmed this court's decision that the entries covered by the second administrative review were deemed liquidated pursuant to 19 U.S.C. 1504(d) (1993) ("§ 1504(d)(1993)"), holding that, in the context of entries whose liquidation had been suspended by statute pending completion of an administrative review, "the publication of the final results in the Federal Register constituted notice from Commerce to Customs that the suspension of liquidation on the subject entries had been removed" within the meaning of § 1504(d) (1993). Int'l Trading II, 281 F.3d at 1277. The Federal Circuit also observed that § 1504(d) (1993) had subsequently "been amended, but not in ways material to the issues in [that] case." Id. at 1271.

The final results of the third administrative review covering the entry that is the subject of the instant action were published in the Federal Register on October 30, 1996. Shop Towels From Bangladesh; Final Results of Antidumping Duty Administrative Review, 61 Fed. Reg. 55,957 (Oct. 30, 1996). Commerce issued liquidation instructions to Customs by e-mail on July 1, 1997, informing Customs that suspension of liquidation was lifted and to liquidate entries subject to the administrative review. Customs liquidated this entry with increased antidumping duties on September 26, 1997, almost one year after publication of the final results. Plaintiff protested the liquidation, arguing the entry had been deemed liquidated pursuant to 19 U.S.C. 1504(d) (1994) ("§ 1504(d)(1994)"). This protest was denied by Customs on the grounds that

3

the period for deemed liquidation was not triggered until Customs received liquidation instructions from Commerce. Shop Towels From Bangladesh, 61 Fed. Reg. 55,957. Upon denial of its protest, Plaintiff commenced this action and now seeks a refund of excess duty and interest paid on the entry.

## III
## APPLICABLE LEGAL STANDARDS

### A
### STANDARD OF REVIEW

Summary judgment is appropriate when, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affadavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(d); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In a motion for summary judgment, the movant bears the burden of demonstrating that there is no genuine issue of material fact. SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985). This may be accomplished by producing evidence showing the lack of any genuine issue of material fact or, where the non-moving party bears the burden of proof at trial, by demonstrating that the nonmovant has failed to make a sufficient showing to establish the existence of an element essential to its case. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The inferences drawn from the underlying facts are viewed in favor of the nonmovant.[2]

---

[2] Because Customs has not given an official interpretation of the relevant statutory language or an official ruling with the denied protest, neither Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) nor United States v. Mead Corp., 533 U.S. 218, 121 S. Ct. 2164, 150 L. Ed. 292 (2001); Skidmore v. Swift & Co., 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944) deference apply. See Hartog Foods Int'l, Inc. v. United States, 291 F.3d 789, 791 (Fed. Cir. 2002).

# IV
# ANALYSIS

## A
## Customs' Interpretation of 19 U.S.C. § 1504(d) Is an
## Impermissible Construction of the Statute

Two statutes are relevant to this case. First, Plaintiff's claim that the entry in issue was deemed liquidated at the rate and amount of duty deposited is based on § 1504(d) (1994), which directs that

> [e]xcept as provided in [19 U.S.C. 1675(a)(3)], when a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry, unless liquidation is extended under subsection (b) of this section, within 6 months after receiving notice of the removal from the Department of Commerce. Any entry not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record.

The first clause of this provision, referencing 19 U.S.C. § 1675(a)(3), was added by the URAA § 220(c) in 1994.[3] H.R. Doc. No. 103-316 at 143 (1994); Plaintiff's Motion, App. Exh. J. In 1993, prior to the passage of the URAA, § 1504(d) was amended by Congress.[4] See Int'l Trading II, 281 F. 3d at 1272; North American Free Trade Agreement Implementation Act, Pub. L. No. 103-

---

[3] The conforming amendment refers to section 751(a)(3) of the Tariff Act of 1930, which is codified at 19 U.S.C. § 1675(a)(3).

[4]
> The amendment was designed in part to address an anomaly in the prior version of the statute, which made deemed liquidation available if suspension of liquidation were removed before the expiration of the maximum four-year period for liquidating entries, but not if suspension of liquidation were removed after expiration of the four-year period.

Int'l Trading II, 281 F. 3d at 1272; See also Dal-Tile Corp. v. US, 17 CIT 764, 767-68 (1993).

5

182, 107 Stat. 2057, sec. 641 (1993). The Federal Circuit explained that one of the effects and rationales of the 1993 amendment to § 1504(d) was a "consequence of Customs' failure to liquidate within [the] six month period," suggesting that "one of the principal objectives of the 1993 amendments [was not giving] the government the unilateral ability to extend the time for liquidating entries indefinitely." Int'l Trading II, 281 F.3d at 1272-73.

The second relevant statute is subparagraph B of § 1675(a)(3), the provision newly referenced in § 1504(d) (1994). The relevant section, § 1675(a)(3)(B), provides that

> [i]f the administering authority orders any liquidation of entries pursuant to a review under paragraph (1), such liquidation shall be made promptly and, to the greatest extent practicable, within 90 days after the instructions to Customs are issued. In any case in which liquidation has not occurred within that 90-day period, the Secretary of the Treasury shall, upon the request of the affected party, provide an explanation thereof.

The United States contends that the entry in question is subject wholly to § 1675(a)(3)(B) as a result of the 1994 amendatory language in § 1504(d), or, in the alternative, that the addition of § 1675(a)(3)(B) alters the triggering date for deemed liquidation, effectively challenging the decision and rationale of the Federal Circuit in Int'l Trading II. Int'l Trading argues that § 1504(d) (1994) and § 1675(a)(3)(B) work in concert, so that the former deemed liquidation consequence applies even if an entry is also subject to the latter. In other words, Plaintiff argues that there is no need for this court even to reach § 1675(a)(3)(B) because deemed liquidation would have happened, in this case, within six months of the Federal Register notice as per § 1504(d). Plaintiff's argument is correct.

**1**
**Textual Analysis Shows International Trading II's Holding of Notice from Publication Requires No Reconsideration**

Statutory construction begins with the plain language of the statute. Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997). The court should look beyond the plain meaning of the statute only if the language is ambiguous or if a literal interpretation would frustrate the purpose behind the statute. Bob Jones Univ. v. United States, 461 U.S. 574, 586, 103 S. Ct. 2017, 76 L. Ed. 2d 157 (1983). Here, neither the plain language of § 1504(d) (1994) and § 1675(a)(3)(B), nor applicable principles of statutory interpretation, require reconsideration of the issues decided in Int'l Trading II. Neither provision changes the required method of notice[5] from publication, as held by the Federal Circuit in Int'l Trading II, back to the issuance of liquidation instructions, as the government contends. An examination of the statutory language strengthens the conclusion that § 1504(d) (1994) and § 1675(a)(3)(B) work in concert to effectuate expedient Customs liquidation.

The words "any entry" in the second clause of § 1504(d) (1994) also encompasses entries subject to the proviso in the first clause.[6] The plain meaning of "any entry" is *any* entry, including ones covered by the proviso. The government contends that the second clause of § 1504(d) (1994) is dependent upon the first clause for its meaning, so that the "any entry" language is qualified by the amendatory proviso. The court, however, looks first to the plain

---

[5] Notice in this context is that from Commerce to Customs that the statutory suspension has been removed.

[6] A proviso generally "remove[s] special cases from the general enactment" while an exception "restrict[s] the enacting clause to a particular case." However, "courts seldom make consistent distinction in the interpretation of [these] types of limitation." 1A Norman J. Singer, Statutes and Statutory Construction § 20:22, at 154 (6th ed. 2002).

meaning. See Marcor Dev. Corp. v. United States, 20 C.I.T. 538, 926 F. Supp. 1124, 1129 (CIT 1996). Here, the words are unambiguous, and the exception that follows in parenthesis refers solely to extended entries.

Despite the clear meaning of the words "any entry," the government maintains that the words should instead be read as "*some* entries, not including those subject to the proviso in thefirst sentence, or extended entries."[7] The government fails to explain why or how § 1675(a)(3) cannot work in concert with § 1504(d) (1994)'s deemed liquidation provision, when it must to effectuate Congress' desire for expedient and certain customs liquidation processes.[8] The simplest conclusion that can be drawn, as Int'l Trading correctly points out, is that "[t]he government's interpretation of the second sentence has the effect of removing the words 'any entry' from that sentence."

The government asserts, under its own plain meaning theory, that when the entry in question became subject to the administrative review and Commerce issued liquidation instructions, it qualified under the amendatory proviso of § 1504(d) (1994) as being subject to § 1675(a)(3)(B). Defendant's Brief in Reply to Plaintiff's Opposition to the Cross Motion for Summary Judgment ("Defendant's Brief in Reply") at 2. Certainly an entry which meets the conditions of § 1504(d) (1994)'s proviso referencing § 1675(a)(3)(B) would be subject to the latter provision. However, the dilemma is again that, under the government's interpretation, the

---

[7] "A text should not be construed strictly, and it should not be construed leniently; it should be construed reasonably, to contain all that it fairly means." Antonin Scalia, A Matter of Interpretation 23 (Amy Gutmann ed., 1997).

[8] A canon of statutory construction is that a statute should be read to avoid internal inconsistencies. Abner J. Mikva & Eric Lane, An Introduction to Statutory Interpretation and the Legislative Process 24 (1997).

entry would be *exclusively* subject to § 1675(a)(3)(B)'s 90 day liquidation requirement, with the sole remedy being an explanation from the Secretary of the Treasury; it would no longer be covered by the six month deemed liquidation consequence of § 1504(d) (1994). This argument is, by itself, is inadequate to support or require the mutual exclusivity of §§ 1504(d) (1994) and 1675(a)(3)(B) that the government asserts is the case.

**2**

**The Government's Argument Would Turn The *In Pari Materia* Doctrine On Its Head**

To help bridge the divide of mutual exclusivity, the government argues that the two statutes are inherently incompatible, and that they must therefore be construed *n pari materia*

The *in pari materia* canon directs that "inconsistencies in one statute may be resolved by looking at another statute on the same subject." lack's Law Dictionary 794 (7th ed. 1999). The government's contention is that allowing the subject entry to be deemed liquidated pursuant to § 1504(d) (1994) may "deprive Customs of the right to liquidate the entry within 90 days after receiving liquidation instructions, a right given to it under § 1675(a)(3)(B)." Defendant's Brief in Reply at 24. This interpretation of § 1504(d) (1994), according to the government's theory, would "frustrate the application of § 1675(a)(3)(B), and cause the two provisions to be inconsistent with one another." Id.

The government's solution is to erect a wall between the two statutes when certain entries fall under the § 1504(d) (1994) proviso[9], rather than allowing the two provisions to "work harmoniously together," as the *in pari materia* canon prescribes. Ambassador Div. of Florsheim Shoe v. United States, 748 F.2d 1560, 1565 (Fed. Cir. 1984). In fact, both provisions *must* work

---

[9] See Defendant's Cross Motion at 39-41.

9

in concert to effectuate the other.  Otherwise, placing the entry solely within the scope of §

1675(a)(3)(B)'s 90 day provision, without subjecting it to the six month deemed liquidation

consequence of § 1504(d) (1994), would frustrate the application of the latter provision, which

by its terms applies to "any entry."

**3**
**The Doctrine of *Expressio Unius Est Exclusio Alterius***
**Favors Plaintiff's Interpretation**

The joint operation of the two provisions is further supported by looking at the structure

of 19 U.S.C.  1504(d) (1996).  Although these additional amendments were not in effect during

the period of review at issue in this case, they are instructive: the statute references two

exceptions in the first sentence but only one in the second sentence.[10]  The canon of statutory

interpretation, *expressio unius est exclusion alterius*, whereby "express[ing] or includ[ing] one

thing implies the exclusion of the other, or of the alternative." Black's Law Dictionary 602 (7th

---

[10] Removal of Suspension

Except as provided in section 1675(a)(3) of this title, when a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry, *unless liquidation is extended under subsection (b) of this section*, within 6 months after receiving notice of removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry.  Any entry *(other than an entry with respect to which liquidation has been extended under subsection (b) of this section)* not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record.

19 USC § 1504(d) (1996) (emphasis added to1996 amendatory language)

ed. 1999). Given this interpretive rule, "where Congress … has carefully employed a term in one place and excluded it in another, it should not be implied where excluded," Marshall v. Western Union Tel. Co., 621 F.2d 1246, 1251 (3d Cir. 1980), it is probable, as Plaintiff argues, that "Congress was aware of the fact that it was omitting an exception for entries subject to administrative review from the [second sentence of § 1504(d) (1994)] and that it did so because such entries are still subject to the consequence of deemed liquidation." Plaintiff's Motion at 20.

In response, the government points out that the amendment to § 1504(d) excepting extended entries (in the second sentence) was made in 1996 and not in 1994, when the amendment excepting administrative review entries was enacted (in the first sentence). Defendant's Brief in Opposition at 17. Therefore, the government argues, the two amendments were not contemporaneous and thus cannot indicate Congressional intent in enacting the 1994 amendment. Id. at 17-18. For this proposition the government cites Pure Oil Co. v. Suarez, 384 U.S. 202, 206, 86 S. Ct. 1394, 16 L. Ed. 2d 474 (1966).

In Pure Oil, the Supreme Court observed that the approach used in a prior case to compare two separate statutes, a technique which was based on the two statutes being re-enacted at the same time, was unavailable since the two statutes at issue had not been contemporaneously re-enacted. Id. Here, while the two amendments were indeed not contemporaneous, they both amended only a single statutory provision, § 1504(d). Thus, the comparison technique of Pure Oil is not applicable here.

11

Moreover, the government concedes that Congress added the "amendatory language in the second sentence [of § 1504(d) excepting extended entries] … to ensure clarity."[11] Defendant's Brief in Opposition at 18 n.3. If so, it is reasonable that Congress would have also added similar clarifying language regarding entries subject to administrative review (§ 1675(a)(3)) to the second sentence in 1994, but it did not, nor did it do so in 1996. The continued absence of such language from the deemed liquidation clause of § 1504(d), even while Congress added language excepting extended entries from that exact same clause, is compelling support for an intentional legislative omission.

**4**

**The Proviso of § 1504(d) (1994) Applies Only to the Clause to Which It is Attached**

Plaintiff also advances the statutory construction argument that the proviso in the first clause of § 1504(d) (1994) applies solely to the clause to which it is attached.[12] It cites Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1316 (9th Cir. 1998) for this proposition: "the most sound reading of a sentence will refer its limiting clause back to the antecedent clause to which it is attached, and not to other paragraphs or sentences in the statute." Similarly, court in Zogbi v. Federated Department Store, 767 F. Supp 1037, 1039 (C.D. Cal. 1991) stated that the "general

---

[11] The 1996 amendment to § 1504(d) is described as such by the U.S. House of Representatives Committee on Ways and Means : "By operation of law, when a suspension of liquidation is removed, Customs must liquidate entries within a specified time period. This provision clarifies that such liquidation should not occur if an extension has been issued."

[12] The proviso clause reads: "[e]xcept as provided in § 1675(a)(3) of this title . . . ."

rule is that a qualifying phrase or clause only modifies that which immediately precedes it." The government asserts that, because the proviso in § 1504(d) (1994) does not have an "antecedent clause," this rule cannot apply. Defendant's Brief in Reply at 9. General principles of statutory construction indicate that this is not necessarily the case:

> The old rule states that the proviso was limited to *the section to which it was attached*, or the sections which preceded it. This rule is seldom followed today. Courts have adopted the rule that the proviso will be applied according to the *general legislative intent* and will limit a single section or the entire act depending on what the legislature intended or what meaning is otherwise indicated. Although the form and the location of the proviso may be some indication of the legislative intent, form alone will not control. *No presumption concerning the scope of its application arises from the location of the proviso.*

2A Norman J. Singer, Statutes and Statutory Construction § 47:09, at 239-241 (6th ed. 2002) (internal citations omitted) (emphasis added).

The "antecedent clause" is unnecessary and current rules of statutory construction indicate that the legislative history of a proviso must also be examined in order to ascertain its full scope. A review of the record for the 1994 amendment to § 1504(d) persuasively demonstrates that it was unlikely Congress intended that the proviso also apply to the second, consequences clause, of that statute.

**5**
**The Legislative History Of The 1994 URAA Amendments**
**Does Not Conflict With Int'l Trading II's Holding**

The legislative history suggests consistency with Int'l Trading II on what constitutes "notice" within the meaning of § 1504(d)(1994) and on which entries are excepted as per §

1675(a)(3)(B) from the consequence of deemed liquidation in § 1504(d) (1994). In fact, very little legislative history pertaining to the 1994 amendatory language exists. There is no indication in the implementing legislation, H.R. Rep. No. 103-826, pt. 1 (1994) ("House Report"); S. Rep. No. 103-412, pt. 1 (1994) ("Senate Report"), that the triggering event for deemed liquidation under § 1504(d) (1994) will relapse to the issuance of liquidation instructions by Commerce. There is also nothing to indicate that all entries subject to § 1675(a)(3)(B) will be removed from the consequence of deemed liquidation under § 1504(d) (1994).

As the government accurately observes, Congress did not impose a time limit on Commerce to issue liquidation instructions in § 1675(a)(3)(B). Defendant's Brief in Reply at 3. However, this does not mean that when subsection B of § 1675(a)(3) was enacted in 1994, Congress was not concerned with finality and expediency in the customs liquidation process. Congress has consistently expressed its desire to enhance "certainty in the customs process," "effectuate [prompt] liquidation" and "impos[e] requirements of expedition on both Commerce and Customs."[13] Int'l Trading II, 281 F.3d at 1272-73.

---

[13] The legislative history states "[t]he Committee intends that Commerce complete its administrative reviews *as quickly as possible*, so that final liability for antidumping and countervailing duties can be *promptly determined* . . . . [I]t is the Committees [sic] intent that Commerce complete its reviews *at the earliest possible time*, while still ensuring that the results are accurate." URAA, S. Rep. No. 103-412, pt. 1 (1994) (emphasis added); Plaintiff's Motion, App. Exh. G. The Customs Procedure Reform and Simplification Act of 1978 states that where prompt notice of deemed liquidation is required so as to "*increase certainty* in the customs process . . . under the present law, an importer may learn *years after* goods have been imported and sold that additional duties are due, or may have deposited more money for estimated duties than are actually due but be unable to recover the excess *for years* as he *awaits* liquidation." S. Rep. No. 95-778, at 32 (1978) (emphasis added). Furthermore, the

Moreover, a major objective of the 1994 URAA amendments implementing the Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade 1994 (hereinafter, "Antidumping Agreement") was to expedite administrative timetables. See URAA, Pub. L. No. 103-465, 108 Stat. 4809, at 4842-4902. The Antidumping Agreement imposed, for the first time, specific time limits within which final duty liability must be calculated (completion of the administrative review) and on the time within which refunds of overdeposited duties must be made (liquidation of the entries). See Id. at 1466 ("[T]he determination of the final liability for payment of anti-dumping duties shall take place *as soon as possible*, normally within twelve months, and in no case more than eighteen months … *any refund shall be made promptly* and normally not more than 90 days following the determination of final liability") (emphasis added).

Congress did not impose a deadline on issuance of liquidation instructions in § 1675(a)(3)(B) because it was simply unnecessary -- not because expediency had ceased to be a virtue. Entries subject to this new provision would still be covered by the six month deemed liquidation consequence of § 1504(d) (1994). Otherwise, Commerce could indefinitely extend the time for liquidating entries and provide only hortatory recourse to parties; this result would be inconsistent with Congress' purpose in both the 1993 and 1994 amendments. It is unlikely that, a year later, Congress would dramatically undercut the 1993 amendments with nothing in the record to indicate that it was doing so.

---

Trade Agreements Act of 1979 established strict timetables for assessment and reviews of antidumping duties. S. Rep. No. 96-249, at 15-18 (1979).

Furthermore, the 1994 amendatory proviso in § 1504(d) (1994) is described in the implementing legislation as being a "conforming amendment." H.R. Doc. No. 103-316 at 143 (1994). When Congress describes an amendment as a "conforming amendment," it generally indicates the amendment should be read as non-substantive. See Springdale Mem'l Hosp. Ass'n, Inc. v. Bowen, 818 F.2d 1377, 1386 n.9 (8th Cir. 1987). The Supreme Court has implied "that when Congress designates an amendment a 'conforming amendment' this constitutes valid evidence of legislative intent that the amendment should be read as a nonsubstantive [sic] reaction to related legislation." Id.; CBS, Inc. v. FCC, 453 U.S. 367, 381-82, 101 S. Ct. 2813, 69 L. Ed. 2d 706 (1981); see also Gorbach v. Reno, 219 F.3d 1087, 1101 (9th Cir. 2000) (Thomas, Circuit Judge, concurring) ("Congressional designation of an amendment as a 'conforming amendment' evidences legislative intent that the amendment should be read as non-substantive").

Despite the "conforming amendment" language, the government claims that the 1994 amendment to § 1504(d) is a substantive modification because it removes certain entries from the deemed liquidation consequence of that statute. This position undermines a major purpose of the 1993 amendment to § 1504(d). The 1993 amendments closed a loophole so that *all* entries (for which suspension of liquidation had been removed) would be subject to deemed liquidation within six months of Customs receiving notice from Commerce that the statutory suspension had been lifted: "[t]he amendment was designed to address an anomaly in the prior version of [§ 1504(d)], which made deemed liquidation available if suspension of liquidation were removed before the expiration of the maximum four-year period for liquidating entries, but not if

16

suspension of liquidation were removed after the expiration of the four-year period." Int'l

Trading II, 281 F.3d at 1272-73. The only uncertainty, resolved in Int'l Trading II, was over

when this notice was received. It is implausible that Congress would have repealed the 1993

change virtually *sub silentio* less than a year later -- with little comment or explanation aside

from the descriptor "conforming amendment." There is no suggestion that either the

Administration or Congress considered the 1994 amendment to § 1504(d) a substantive change

which would have removed a subset of entries from the scope of deemed liquidation, effectively

re-opening a loophole that had been sewn shut the year before.

The Government correctly observes that the 1994 URAA made several substantive

changes to existing law. As examples, the Government notes the creation of new standards for

determining whether dumping margins are de minimis or import volumes are negligible, as well

as a new five-year "sunset" review provision. Defendant's Brief in Opposition at 26; See also

Plaintiff's Motion, App. Exh. K). However, unlike the amendatory changes to § 1504(d), none

of the substantive changes cited by the Defendant are described in the implementing legislation

or the Committee Reports as simply "conforming amendments." The 1994 amendment to §

1504(d) was simply a technical, non-substantive change to conform the statute to the Uruguay

Round Trade Agreements; not a significant substantive modification to existing law.

The government's counterarguments are unpersuasive. In response to the point that

adopting the Defendant's interpretation of the 1994 amendatory language would undo *sub*

*silentio* the substantive change enacted the year prior, the Defendant declares, without more, that

17

the 1994 amendment "did not undo the change made in 1993, but merely substituted the liquidation provisions of § 1675(a)(3) for those of § 1504(d) in order to conform domestic law to the international agreement." Defendant's Brief in Reply at 14. This reasoning is flawed; "substitut[ing] the liquidation provisions" would in fact "undo the change made in 1993." Id. In other words, given that the 1993 amendment made all entries (in which suspension of liquidation had been removed) subject to deemed liquidation, the complete substitution of the liquidation provisions of § 1675(a)(3) for those of § 1504(d) for entries under administrative review would, in fact, invalidate the 1993 change, since such entries would no longer be subject to deemed liquidation.

Alternatively, the government suggests that the alleged substantive change in 1994 was not implemented *sub silentio* at all, but was in fact "described in the Statement of Administrative Action and in the congressional reports." Defendant's Brief in Reply at 14.[14] This argument confuses the issue and fails to respond to the *sub silentio* concern. The core dilemma is that the government can point to no evidence of Congressional intent to undo the 1993 amendatory change establishing deemed liquidation for all entries, in which suspension of liquidation had been removed, not that the enactment of the 1994 amendment had been publicly described. The government seems to confuse the difference between the mere description of amendatory

---

[14] Defendant continues: "It was there stated that Article 9.3 'establishes new rules regarding the assessment of anti-dumping duties …,' and that duty refunds would be paid 'normally within ninety days after the determination of final assessment, and provide an explanation, if requested, for any delay." Defendant's Brief in Reply at 14.

changes, an exercise requisite to any type of legislative drafting, with the substantive change in statutory understanding that is at issue.

The government also contends that in fact "[t]here was no need for such express statements because the amendatory language, 'except as provided …,' … had a definite meaning in the law and was sufficient to express Congress' intent." Id. at 15. Here, the Defendant cites to United States v. Page, 131 F.3d 1173 (6th Cir. 1997), cert. denied, 525 U.S. 828 (1998), and United States v. Cortez-Claudio, 312 F.3d 17 (1st Cir. 2002), both of which dealt with a statute containing similar language. In Cortez-Claudio, the court states that "Section 3583(b) itself begins with the phrase 'except as otherwise provided.' This proviso indicates that § 3583(b) yields to other more specific statutes, such as § 841, that make different provisions for terms of supervised release for particular offenses." Cortez-Claudio, 312 F.3d at 21.

However, the government does not explain how a proviso "yield[ing] to other more specific statutes" would remove administrative review entries from the scope of deemed liquidation under the second clause of § 1504(d) (1994). The Page court noted that the proviso in that case yielded only when there was an "apparent conflict." Page, 131 F.3d at 1180. In that case, the two statutes in question were not capable of working in concert; if one applied, the other did not. Id. at 1177 (explaining that one provided for a supervised release term of "at least 3 years," while the other directed a term of "not more" than three years). Here, there is no conflict because it is possible for both statutes to work together. Thus, the government's citation of Page does not adequately support its position that the "except as provided" language has a meaning sufficiently definite so as to obviate any need for Congress to express its intent.

Aside from the "conforming amendment" language, there is another portion of noteworthy legislative text. Section 1504 is described as a "provision which establishes *general* rules regarding the liquidation of customs entries" in the Statement of Administrative Action and Senate Report. URAA, Statement of Administrative Action, H.R. Doc. No. 103-465, at 875 (1994). "General" is defined in lexicons as follows:

> general … adj. 1. Relating to, concerned with, or applicable to the whole or every member of a class or category. 4.a. Not limited in scope, area, or application: *as a general rule*.

American Heritage Dictionary 552 (2d ed. 1982).

> general … adj. 1: involving or belong to the whole of a body, group, class, or type: applicable or relevant to the whole rather than to a limited part, group, or section.

Webster's Third New International Dictionary 944 (1986).

The plain meaning of "general" suggests that § 1504(d) (1994) acts as a default or baseline rule which is not limited in scope or application. Under this interpretation, § 1504(d) (1994)'s six month deemed liquidation provision would remain active even while certain entries were also covered by § 1675(a)(3)(B)'s 90 day liquidation requirement.

The two sections of the statute, § 1675(a)(3)(B) and § 1504(d), thus operate in the following fashion: Under § 1675(a)(3)(B), an entry that is not liquidated by Customs within 90 days after the Commerce liquidation order confers the right upon the importer to demand an explanation from the Secretary of the Treasury. If the entry has still not been liquidated (or extended) six months after notice of removal of suspension (i.e. publication in the Federal Register), then § 1504(d) (1994) directs that liquidation be effected by operation of law.

**B**
**The Federal Circuit's Opinion in <u>Int'l Trading II</u> Supports Plaintiff's Position**


Customs liquidated Plaintiff's entry on September 26, 1997, nearly one year after publication in the Federal Register, and denied its protest on the grounds that such publication did not constitute notice of removal of suspension. In <u>Int'l Trading II</u>, under facts closely parallel to those of the instant case, the Federal Circuit deemed such a long delay impermissible. The court held that publication of the final results in the Federal Register removes the statutory suspension of liquidation for entries whose liquidation had been suspended by statute pending completion of an administrative review; the publication also serves as notice to Customs that the statutory suspension has been removed. <u>Int'l Trading II</u>, 281 F.3d at 1277.

The Government erroneously contends that the 1994 URAA amendments nullify the holding and rationale of <u>Int'l Trading II</u> by shifting the period for deemed liquidation. The holding of <u>Int'l Trading II</u> remains under the purview of the 1994 URAA amendment. Even with the amendatory clause in § 1504(d) (1994) referencing liquidation instructions in § 1675(a)(3)(B), the reasoning of <u>Int'l Trading II</u>, with regards to the issuance of liquidation instructions, is germane. The Government is correct to argue that there is no statute that requires a public notice of removal of suspension. The Federal Circuit itself in <u>Int'l Trading II</u> stated that "neither section 1504 not any other statute or regulation defines" what constitutes the removal of suspension or the notice of removal to Customs. <u>Id.</u> Nevertheless, the court found that "[t]he statutory scheme governing suspension of liquidation supports the trial court's conclusion that suspension of liquidation was removed when the final results of the administrative review were

21

published in the Federal Register." Id. at 1272. Furthermore, Defendant ignores the Federal

Circuit's knowledge in Int'l Trading II of the exception added to the first clause of § 1504(d).

The court specifically observed that § 1504(d) (1993) had since been amended, "but not in ways

material to the issues in this case." Int'l Trading II, 281 F.3d at 1271.

The Government also argues that Customs is not covered under the Federal Register Act,

which states that "[u]nless otherwise specifically provided by statute, filing of a document,

required or authorized to be published by section 1505 of this title. . . is sufficient to give notice

of the contents of the document to the person subject to or affected by it." 44 U.S.C. § 1507

(1994). The Government claims that, while "person" is defined in 44 U.S.C. § 1501 as an

"individual, partnership, association, or corporation," the terms "agency" and "Federal agency"

are defined separately and are not included in the definition of "person." Therefore, the

Government argues that the Federal Register Act does not apply to Customs.[15]

This court gathers from the Federal Circuit's reasoning in Int'l Trading II and denial of

the Government's petition for rehearing on the very same claim that the Federal Circuit did not

want to reach the result that would follow from application of the Government's current

interpretation of the statute.

The Government further claims, in support of its argument to preclude the notice effect of

the Federal Register, that 19 U.S.C. § 1677f(b)(1) (1994)[16] requires the preservation of

---

[15] The Federal Circuit did not explicitly address this argument when the Government presented its submissions in Int'l Trading II. However, when the Government petitioned the Federal Circuit for rehearing specifically on this issue on April 12, 2002, the petition was denied without opinion on April 24, 2002.

[16] "Except as provided…, information submitted to the administering authority or the Commission which is designated as proprietary by the person submitting the information

22

confidentiality of business proprietary material often included in liquidation instructions, thus

precluding publication. To support its assertion, the Government cites the declaration of a

Commerce employee, Laurie Parkhill:

> When liquidation instructions include business proprietary information, such as the names of importers or exporters and specific rates of duty, the Import Administration has a practice of including in the instructions a statement that they are not to be released to the public. That practice has been in place at least since 1997. The reason for that practice is to ensure that business proprietary information is not disclosed inappropriately to the public.

> Although the message Commerce transmits to Customs for transmission to the ports requires Customs not to release the message to the public, my staff makes available in the public files of the Import Administration a public version of the instructions. In that public version, at a minimum, is the date on which Customs transmitted our liquidation instructions to the field. This practice has been in place at least since 1997.

Declaration of Laurie Parkhill at ¶¶4-5.

Although Ms. Parkhill explains that a public version of the instructions eventually are

available, they are not publicly available at the same time the instructions containing proprietary

information are issued. Therefore, under the Government's argument *infra* in which the issuance

of instructions trigger the statutory "time clock" under § 1675(a)(3)(B), parties are first supposed

to wait through the indefinite period until Commerce issues liquidation instructions to Customs

and then when liquidation instructions are eventually issued parties will not know about the

commencement of the 90-day period under § 1675(a)(3)(B) until a public version is available.

The Government's defense of its inability to afford immediate public notice of liquidation

instructions is unpersuasive. Defendant conceded during oral argument that it could have

---

shall not be disclosed to any person without the consent of the person submitting the information …."

published a redacted version of the instructions when it sent the instructions through the confidential email in the case at hand. Overall, for this court to deem Int'l Trading II inapplicable to the case at hand would frustrate the policy considerations of efficiency and predictability that the Federal Circuit intended. Indeed, the Federal Circuit stated:

> The date of publication provides an unambiguous and public starting point for the six-month liquidation period, and it does not give the government the ability to postpone indefinitely the removal of suspension and liquidation (and thus the date by which liquidation must be completed) as would be the case if the six-month liquidation period did not begin to run until Commerce sent a message to Customs advising of the removal of suspension of liquidation. Beyond that, treating the date of notification as separate from the date of publication could lead to messy factual disputes about when Customs actually received notice of the removal of the suspension of liquidation. As in this case, the courts would be required to referee debates about what kind of communication from Commerce relating to the announcement of the final results constituted a qualifying "notice" of the removal of suspension. . . . Adopting that position would require the courts, after the fact, to examine informal and non-public communications between Commerce and Customs to determine whether and when those communications constituted "liquidation instructions."

Id. at 1275-76; see also NEC Solutions v. United States, Slip-Op. 03-80, 2003 Ct. Int'l Trade LEXIS 80 (July 9, 2003) (explaining what constituted notice in the absence of a Federal Register notice).

The Federal Circuit has stated clearly that the Commerce and Customs should not be allowed to circumvent the expediency provided for in the § 1504(d) by postponing the issuance of its instructions indefinitely. The justifications for untimeliness made in this case by the Government that "the delay[in issuing liquidating instructions to Customs]…was caused by an excess workload at Commerce…" are unsatisfactory. See Defendant's Cross Motion at 14 (referencing Declaration of Laurie Parkhill ¶ 3). Because § 1504(d) was not been amended

materially, nothing renders the reasoning of Int'l Trading II irrelevant or inapposite to the case at bar.

Alternatively, the Government proposes that the subject entry is wholly removed from the reach of § 1504(d) (1994), and subject solely to § 1675(a)(3)(B). This again runs counter to the holding and rationale of Int'l Trading II because Commerce could postpone for any period of time the issuance of liquidation instructions without consequence to itself. Int'l Trading II, 281 F.3d at 1273. As a result, § 1675(a)(3)(B) *must* work in concert with § 1504(d) (1994)'s six-month deemed liquidation provision. Otherwise, Commerce would have the unilateral ability to extend the time for liquidating entries indefinitely, a result Congress could not have intended. Id. Unfettered discretion to Commerce would undermine one of the principal objectives of the 1993 amendments, which were enacted the year before to:

> address an anomaly in the prior version of [§ 1504(d)], which made deemed liquidation available if suspension of liquidation were removed before the expiration of the maximum four-year period for liquidating entries, but not if suspension of liquidation were removed after the expiration of the four-year period. [citation omitted] The amendment increased the period of time within which Customs could liquidate entries after removal of suspension of liquidation from 90 days to six months. In addition, however, *the amendment made clear that deemed liquidation was the consequence of Customs' failure to liquidate within that six-month period.* See H.R. Rep. No. 103-361 part I, at 139 (1993).

Int'l Trading II, 281 F.3d at 1272-73 (emphasis added).

Not only would the government's argument be contrary to the reasoning of Int'l Trading II, but the contention is an interpretation of § 1504(d) (1994), that was first advanced in the briefs for litigation purposes. As such, the argument is not entitled to judicial deference under Chevron. See, e.g., Chrysler Corp. v. United States, 24 C.I.T. 75, 80 n.4, 87 F. Supp. 2d 1339 (2000) (refusing to defer to government's interpretation of its regulation advanced solely for litigation purposes); Texport Oil Co. v. United States, 185 F.3d 1291, 1294 (Fed. Cir. 1999)

(declining to extend <u>Chevron</u> deference where the agency had not advanced a position on the issue); <u>Parker v. Office of Pers. Mgmt.</u>, 974 F.2d 164, 166 (Fed. Cir. 1992) ("post-"). Indeed, Customs itself does not make the claim that the entry is wholly removed from the deemed liquidation consequence of § 1504(d) (1994), only that notice of removal of suspension cannot be provided by publication; this is the very argument repudiated by <u>Int'l Trading II</u>. <u>See</u> Customs HQ 228678, Plaintiff's Motion, App. Exh. I.

Both of the government arguments in this case, either requiring the court to re-assign the starting point for the six-month liquidation period back to the issuance of liquidation instructions, or excepting the entry from the deemed liquidation consequence of § 1504(d) (1994), would directly contradict the holding and rationale of <u>Int'l Trading II</u>. The period for deemed liquidation pursuant to § 1504(d) (1994) was not triggered when Customs received liquidation instructions from Commerce on July 1, 1997, but rather when the final results of the third administrative review covering the entry were published in the Federal Register on October 30, 1996. The subject entry was thus deemed liquidated by operation of law on April 30, 1997.

## V
## CONCLUSION

Plaintiff's entries were deemed liquidated pursuant to § 1504(d) on April 30, 1997. This court declines to apply § 1675(a)(3)(B) to this case because over six months elapsed between the notice to Customs in the Federal Register on October 30, 1996, and the time at which Customs liquidated the entry on September 26, 1997. The court grants summary judgment for the Plaintiff and denies summary judgment for the Defendant. Customs is directed to re-liquidate the subject

26

entry, refunding all antidumping duties assessed in excess of those deposited at the time of entry, along with interest assessed on such excess antidumping duties.


           /s/     Evan J. Wallach, Judge


Date:   January 2, 2004
       New York, New York