# United States Court of Appeals for the Federal Circuit

04-1259

INTERNATIONAL TRADING CO.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

R. Brian Burke, Rode & Qualey, of New York, New York, argued for plaintiff-appellee. With him on the brief was William J. Maloney.

James A. Curley, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, argued for defendant-appellant. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, of Washington, DC, and Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, of New York, New York. Of counsel on the brief were Edward N. Maurer, Attorney, Office of Assistant Chief Counsel, United States Customs and Border Protection, of New York, New York, and Dean A. Pinkert, Attorney, Office of Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

Appealed from: United States Court of International Trade

Judge Evan J. Wallach

# United States Court of Appeals for the Federal Circuit

04-1259

INTERNATIONAL TRADING CO.,

Plaintiff-Appellee,

v.

UNITED STATES,

Defendant-Appellant.

DECIDED: June 16, 2005

Before LOURIE, RADER, and SCHALL, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

The United States appeals from a decision of the United States Court of International Trade holding that the United States Customs Service ("Customs")[1] did not liquidate a particular entry of goods within the statutorily allotted time, and that therefore, pursuant to 19 U.S.C. § 1504(d),[2] the entry was deemed liquidated at the rate and amount of duty deposited by the importer. The government challenges the court's

---

[1] Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection. Homeland Security Act of 2002, Pub. L. 107-296, § 1502, 116 Stat. 2135, 2308-2309 (2002).

[2] Statutory references are to the 2000 version of the United States Code.

ruling as to when the period for Customs to liquidate the entry began to run. It also challenges the court's interpretation of section 1504(d). Because we reject the government's arguments, we affirm the court's decision.

BACKGROUND

I.

In March of 1994, International Trading Company ("ITC") imported shop towels from a company in Bangladesh, Sonar Cotton Mills, Ltd. ("Sonar"). At the time of their entry into the United States, the towels were subject to an antidumping duty order that required a cash deposit of an antidumping duty computed at the rate of 2.72%. This resulted in ITC depositing an antidumping duty in the amount of $1962.48 with respect to the March 1994 entry. On April 14, 1995, the Department of Commerce ("Commerce") published a notice in the Federal Register that it would conduct a third administrative review of the antidumping duty order, covering the period from March 1, 1994, to February 28, 1995. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 60 Fed. Reg. 19,017 (Apr. 14, 1995). Final liquidation of the March 1994 entry was therefore suspended pursuant to 19 U.S.C. § 1673b(d).

The final results of the third administrative review were published on October 30, 1996. Shop Towels from Bangladesh; Final Results of Administrative Review, 61 Fed. Reg. 55,957 (Oct. 30, 1996). The final results announced an antidumping duty rate of 27.31% for Sonar's towels for the period March 1, 1994, through February 28, 1995. On July 1, 1997, Commerce issued liquidation instructions to Customs by e-mail, informing Customs that suspension of liquidation was lifted and ordering Customs to liquidate entries subject to the administrative review.

On September 26, 1997, almost one year after publication of the final results, Customs liquidated ITC's March 1994 shop towel entry at the rate determined in the third administrative review. This resulted in $17,779.92 in additional antidumping duty being owed with respect to the entry. ITC protested the liquidation, pointing to 19 U.S.C. § 1504(d). Section 1504(d) provides that "[e]xcept as provided in section 1675(a)(3) of this title," when a suspension of liquidation is removed, Customs shall liquidate the entry, unless liquidation is extended, within six months after receiving notice of the removal from Commerce. The statute also provides that "[a]ny entry . . . not liquidated by Customs within six months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity and amount of duty asserted at the time of entry by the importer of record." Id. ITC argued that the suspension of liquidation was removed in this case on October 30, 1996, when the results of the third administrative review were published. Therefore, according to ITC, pursuant to section 1504(d), the March 1994 entry was deemed liquidated six months later on April 30, 1997, at the rate in effect (2.72%) and the amount of duty deposited ($1962.48) at the time of entry. After Customs denied the protest, ITC paid the increased antidumping duty.

II.

On February 25, 2000, ITC filed suit in the Court of International Trade, seeking a refund of the $17,779.92 in additional antidumping duty it had paid with respect to the March 1994 entry of shop towels. Eventually moving for summary judgment, ITC contended that the March 1994 entry should have been deemed liquidated at the original deposit rate of 2.72% pursuant to 19 U.S.C. § 1504(d), because Customs had

failed to liquidate the entry within the allotted six-month period. Cross-moving for summary judgment, the government argued that publication of the final results of an administrative review in the Federal Register does not constitute notice to Customs of the removal of a suspension of liquidation within the meaning of section 1504(d). It also argued that the proviso in the first sentence of section 1504(d), "[e]xcept as provided in section 1675(a)(3) of this title," means that if an entry is subject to section 1675(a)(3), it is not subject to the deemed liquidation mandate of section 1504(d). For these reasons, the government urged, the six-month time period for liquidating the March 1994 entry of shop towels did not begin until July 1, 1997, when Commerce issued liquidation instructions to Customs by e-mail.

Ruling on the motions for summary judgment, the Court of International Trade held that, in accordance with 19 U.S.C. § 1504(d), the March 1994 entry was deemed liquidated at the 2.72% deposit rate because Customs had failed to liquidate the entry within the allotted six-month period. Int'l Trading Co. v. United States, 306 F. Supp. 2d 1265 (Ct. Int'l Trade 2004) ("Summary Judgment Order"). The court rejected the government's contention that publication of the final results of the third administrative review in the Federal Register did not constitute notice to Customs of removal of the suspension of liquidation within the meaning of 1504(d). In addressing the government's argument on this point, the court relied on our decision in International Trading Co. v. United States, 281 F.3d 1268 (Fed. Cir. 2002) ("International Trading II"). Summary Judgment Order, 306 F. Supp. 2d at 1266. In International Trading II, we held that the April 1994 suspension of liquidation of shop towel entries from Bangladesh during the period March 1, 1993, to February 28, 1994, was removed upon publication

04-1259                                 4

of the final results of the second administrative review in the Federal Register, and that this publication constituted notice to Customs within the meaning of 19 U.S.C. § 1504(d).

The Court of International Trade noted that the case before it was similar in all material respects to the action that was the subject of our decision in International Trading II, except that the entry at issue in this case was made approximately one month after the last entry covered by International Trading II. Summary Judgment Order, 306 F. Supp. 2d at 1266. Unlike the entries at issue in International Trading II, which were covered by the second administrative review, the entries at issue in this case were covered by the third administrative review and, consequently, were subject to the 1994 amendments under the Uruguay Round Agreements Act ("URAA"), Pub. L. No. 103-465, 108 Stat. 4809 (1994). These amendments added the "[e]xcept as provided in section 1675(a)(3) of this title" proviso to section 1504(d). Section 1675(a)(3) provides, in relevant part, that if Commerce orders the liquidation of entries pursuant to an administrative review, the entries are to be liquidated "promptly and, to the greatest extent practicable, within 90 days after the instructions to Commerce are issued." 19 U.S.C. § 1675(a)(3)(B). The court rejected the government's contention that the proviso meant that an entry subject to the administrative review provisions of section 1675(a)(3) is exempt from the deemed liquidation mandate of section 1504(d). The Court of International Trade determined that sections 1504(d) and 1675(a)(3) work together to effectuate expedient Customs liquidation in the following manner:

> Under § 1675(a)(3), an entry that is not liquidated by Customs within 90 days after the Commerce liquidation order confers the right upon the importer to demand an explanation from the Secretary of the Treasury. If the entry

> has still not been liquidated (or extended) six months after notice of removal of suspension (i.e. publication in the Federal Register), then § 1504(d) (1994) directs that liquidation be effected by operation of the law.

Summary Judgment Order, 306 F. Supp. 2d at 1275.

The court consequently granted ITC's motion for summary judgment, ruling that the period for deemed liquidation pursuant to section 1504(d) was not triggered when Customs received e-mail liquidation instructions from Commerce on July 1, 1997, but rather, when the results of the third administrative review were published in the Federal Register on October 30, 1996. As a result, the court held, the March 1994 entry was deemed liquidated by operation of law six months later on April 30, 1997, at the rate asserted and the amount of duty deposited at the time of entry. Summary Judgment Order, 306 F. Supp. 2d at 1278-79.

## DISCUSSION

### I.

We review the Court of International Trade's grant of summary judgment for correctness as a matter of law, deciding de novo (i) the proper interpretation of the governing statute and regulations; and (ii) whether genuine issues of material fact exist. Int'l Light Metals v. United States, 194 F.3d 1355, 1361 (Fed. Cir. 1999). In this case, the material facts are not in dispute.

The government's first argument on appeal is that the Court of International Trade, relying on International Trading II, erred in holding that publication of the final results of the third administrative review in the Federal Register provided notice to Customs of the removal of the suspension of liquidation of the March 1994 shop towel entry. The government argues that publication of the final results in the Federal

Register did not constitute notice to Customs within the meaning of section 1504(d). In making this argument, the government points to the notice provision of the Federal Register Act, 44 U.S.C. §§ 1501-1511, which provides in relevant part as follows:

> Unless otherwise specifically provided by statute, filing of a document, required or authorized to be published by section 1505 of this title, . . . is sufficient to give notice of the contents of the document to a <u>person</u> subject to or affected by it.

44 U.S.C. § 1507 (emphasis added). The government notes that a "person" is defined in 44 U.S.C. § 1501 as "an individual, partnership, association or corporation." The government further notes that a federal agency is not included in the definition of a "person" and, indeed, is separately defined in section 1501 as the President, an executive department, an independent board, etc. From this, the government advances the argument that "while publication of a document in the Federal Register can constitute notice of the contents of the document to a 'person,' it is not notice to Customs, which, by definition, is not a 'person' within the meaning of [section 1501]."

The government states that it advanced this argument in its briefing in <u>International Trading II</u> (which did not mention the argument) and in an unsuccessful petition for panel rehearing following the decision in <u>International Trading II</u>. The government urges that the court erred in <u>International Trading II</u> when it held that publication of the final results of an administrative review in the Federal Register provides notice to Customs of the removal of a suspension of liquidation. The government asks us to recommend to the full court that <u>International Trading II</u> be overruled <u>en</u> <u>banc</u>. <u>See</u> Federal Circuit Rule 35(a)(2) (2004).

We are not persuaded by the government's argument. International Trading II's discussion of the issue of notice to Customs is thorough and well-reasoned. The court stated:

> For some of the same reasons that publication of the final results [of an administrative review] removes the suspension of liquidation, publication also provides notice of the removal to Customs. Publication in the Federal Register is a familiar manner of providing notice to parties in antidumping proceedings. See, e.g., 19 U.S.C. § 1673d(d) (1994) (requiring the International Trade Commission and Commerce to notify interested parties of their determinations by publication in the Federal Register); 19 U.S.C. § 1673e(c)(2)(A) (1994) (requiring Commerce to publish notice in the Federal Register if it decides to allow an importer to post a bond in lieu of the deposit of estimated antidumping duties); 19 U.S.C. § 1673e(c)(3) (1988) (requiring Commerce to publish notice in the Federal Register of the results of its determinations and to assess antidumping duties based on those published results); 19 U.S.C. § 1516a(a) (1994) (requiring parties who object to a Commission decision to act within 30 days after the date of publication of that decision in the Federal Register); 19 U.S.C. § 1516a(c)(1) (1994) (tying the date for liquidation of entries affected by a relevant court decision to the date that notice of that court decision is published in the Federal Register). It therefore seems reasonable that Congress intended for publication of the final results in the Federal Register to have some legal effect.
>
> Moreover, the date of publication provides an unambiguous and public starting point for the six-month liquidation period, and it does not give the government the ability to postpone indefinitely the removal of suspension of liquidation (and thus the date by which liquidation must be completed) as would be the case if the six-month liquidation period did not begin to run until Commerce sent a message to Customs advising of the removal of suspension of liquidation. Beyond that, treating the date of notification as separate from the date of publication could lead to messy factual disputes about when Customs actually received notice of the removal of the suspension of liquidation.

Int'l Trading II, 281 F.3d at 1275.

Thus, International Trading II based its ruling on the notice issue on a careful analysis of statutes relating to antidumping proceedings and on sensible policy considerations. Moreover, we see nothing in the language of 44 U.S.C. § 1507 that compels the result the government urges. Section 1507 simply states that filing of a document with the Federal Register Office "is sufficient to give notice of the contents to a person subject to or affected by it." That is not the same as stating that filing of a document by a government agency is not sufficient notice to a sister government agency. We therefore reject the government's request that we ask the full court to act en banc to overrule International Trading II.

II.

A.

Under International Trading II, the suspension of liquidation of the March 1994 shop towel entry was removed on October 30, 1996, when Commerce published notice of the results of the third administrative review in the Federal Register. Also under International Trading II, publication of the results of the administrative review in the Federal Register gave Customs notice of the removal of the suspension of liquidation. Thus, were it not for the 1994 amendment adding the "[e]xcept as provided" clause to 19 U.S.C. § 1504(d), this case would be on "all fours" with International Trading II. In short, there would be no question that, in accordance with the plain language of section 1504(d), the March 1994 shop towel entry was deemed liquidated at the 2.72% rate of entry on April 30, 1997, six months after the removal of the suspension of its liquidation.

What we must now address is whether the 1994 amendment changes that result. We begin with the statutory language. Section 1504(d) provides as follows:

> **(d) Removal of suspension**
> Except as provided in section 1675(a)(3) of this title, when a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry, unless liquidation is extended under subsection (b) of this section, [3] within 6 months after receiving notice of the removal from the Department of Commerce. Any entry (other than an entry with respect to which liquidation has been extended under subsection (b) of this section) not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record.

19 U.S.C. § 1504(d). Section 1675(a)(3), which is referenced in the first sentence of section 1504(d), provides in relevant part as follows:

> **(B) Liquidation of entries.**
> If the administering authority orders any liquidation of entries pursuant to a review under paragraph (1),[4] such liquidation shall be made promptly and, to the greatest extent practicable, within 90 days after the instructions to Customs are issued. In any case in which liquidation has not occurred within that 90-day period, the Secretary of the Treasury shall, upon the request of the affected party, provide an explanation thereof.

19 U.S.C. § 1675(a)(3)(B).

Congress enacted section 1504 in 1978, in order to restrict the length of time Customs could take to liquidate an entry. See § 209(a), Pub. L. No. 95-410, 92 Stat. 902. Congress sought to "increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs

---

[3] The exception for an entry whose liquidation has been extended pursuant to 19 U.S.C. § 1504(b) does not apply in this case.

transaction." <u>International Trading II</u>, 281 F.3d at 1272 (quoting <u>Dal-Tile Corp. v. United States</u>, 829 F. Supp. 394, 399 (Ct. Int'l Trade 1993)).  Congress originally imposed a maximum four-year time period for liquidation (starting from the date of entry of the merchandise) and a ninety-day time period in which Customs could liquidate entries after the removal of a suspension of liquidation.  <u>Id.</u>  However, in 1993, Congress amended section 1504(d) in order to address an anomaly in the 1978 version of the statute, "which made deemed liquidation available if suspension of liquidation were removed before the expiration of the maximum four-year period for liquidating entries, but not if suspension of liquidation were removed after the expiration of the four-year period."  <u>Id.</u> (citing <u>Dal-Tile</u>, 829 F. Supp. at 399-400).[5]  The amendment also increased the time period in which Customs could liquidate entries after the removal of a

_____

(Cont'd. . . .)

[4]   Paragraph (1) of 19 U.S.C. § 1675(a) provides, <u>inter</u> <u>alia</u>, for periodic antidumping administrative reviews.

[5]   The 1978 version of the statute provided:

> Any entry of merchandise not liquidated at the expiration of four years from the applicable date specified in subsection (a) of this section, shall be deemed liquidated at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer, his assignee, or agent, unless liquidation continues to be suspended as required by statute or court order.  <u>When such suspension of liquidation is removed, the entry shall be liquidated within 90 days therefrom</u>.

19 U.S.C. § 1504(d) (1978) (emphasis added).  The "applicable date" was the date of entry of the merchandise.  <u>Id.</u> § 1504(a).  Court decisions interpreted the 90-day time period in the last sentence as directory rather than mandatory.  <u>See</u> <u>Dal-Tile</u>, 829 F. Supp. at 397.  Thus, if the suspension of liquidation was removed one day before the fourth anniversary date, Customs would have only one day in which to liquidate the entry and thereby avoid the application of the deemed liquidation rule.  <u>Id.</u>  However, if the suspension of liquidation was not removed within the four-year period, Customs would have an indefinite period of time in which to liquidate the merchandise.  <u>Id.</u>

suspension of liquidation from ninety days to six months.  <u>International Trading II</u>, 281

F.3d at 1273.   In <u>International Trading II</u>, we noted that one of the primary objectives of

the 1993 amendments was to remove the government's unilateral ability to extend

indefinitely the time for liquidating entries.  <u>Id.</u> at 1273.

Section 1504(d) was amended just one year later, after the United States signed

the Uruguay Round Agreements in 1994.  Annexed to The Uruguay Round Agreements

was the Agreement on Implementation of Article VI of the General Agreement on Tariff

and Trade 1994 (the "Antidumping Agreement").  The Antidumping Agreement imposed

time limits for the completion of administrative reviews and for the liquidation of entries.

Article 9.31 of the Agreement provides:

> When the amount of the anti-dumping duty is assessed on a retrospective basis, the determination of the final liability for payment of anti-dumping duties shall take place as soon as possible, normally within 12 months, and in no case more than 18 months, after the date on which a request for a final assessment of the amount of the anti-dumping duty has been made.[20]   Any refund shall be made promptly and normally in not more than 90 days following the determination of final liability made pursuant to this sub-paragraph.  In any case, where a refund is not made within 90 days, the authorities shall provide an explanation if so requested.
> 
> _____
> 
> 20.  It is understood that the observance of time-limits mentioned in this subparagraph and in subparagraph 3.2 may not be possible where the product in question is subject to judicial review proceedings.

Antidumping Agreement, art. 9.31, in Annex 1A to the Agreement Establishing the

World Trade Organization, Final Act Embodying the Results of the Uruguay Round of

Multilateral Trade Negotiations, Apr. 15, 1994, <u>reprinted in</u> World Trade Organization,

The Legal Texts: The Results of The Uruguay Round of Multilateral Trade Negotiations 147 (1999).

In order for the United States to fulfill its obligations under the Antidumping Agreement, Congress amended the tariff law by adding three new subsections to 19 U.S.C. § 1675(a)(3). URAA, 108 Stat. 4809. Subsection B of section 1675(a)(3), which is at issue in this case, was added with respect to the liquidation of entries subject to an administrative review. Congress also amended section 1504(d) by adding the phrase "[e]xcept as provided in section 1675(a)(3) of this title," to the first sentence of the section. The proviso language in section 1504(d) is described in the implementing legislation as a "conforming amendment." See URAA, § 220(c), 108 Stat. at 4865.[6]

B.

The government contends that the Court of International Trade's interpretation of section 1504(d) is erroneous because it gives no effect to the clause "[e]xcept as provided in section 1675(a)(3) of this title." The government argues that the plain meaning of this clause is that an entry covered by the provisions of section 1675(a)(3)(B) is exempt from the deemed liquidation mandate of section 1504(d).

---

[6] Section 220 of the URAA states in relevant part:

Conforming Amendment.—Section 504 (19 U.S.C. 1504) is amended—

  (1) in subsection (a), by inserting "except as provided in section 751(a)(3)," before "an entry of merchandise not liquidated", and
  (2) in subsection (d), by striking "When a suspension" and inserting "Except as provided in section 751(a)(3), when a suspension".

URAA, § 220(c), 108 Stat. at 4865.

According to the government, the clause requires section 1504(d)'s general command to yield to the more specific language of section 1675(a)(3), which the government asserts imposes only the requirement that, "to the greatest extent practicable," Customs liquidate an entry within ninety days after instructions issue following completion of an administrative review. The government thus urges that an entry subject to the proviso of the first sentence of section 1504(d) need not be liquidated within six months after notice of the removal of the suspension of liquidation and that the deemed liquidation requirement of the second sentence of the section simply does not apply. Consequently, the government argues, the September 26, 1997 liquidation of the March 1994 shop towel entry was timely.[7]

The government also argues that the legislative history does not support the Court of International Trade's interpretation of section 1504(d). In so arguing, the government relies upon the Statement of Administrative Action ("SAA"), which accompanied the submission of the legislation implementing the URAA.[8] H.R. Rep. No.

---

[7] The government's argument that the March 1994 entry was wholly removed from the reach of section 1504(d) and was subject solely to section 1675(a)(3)(B), was advanced for the first time before the Court of International Trade. Under these circumstances, the argument was not entitled to deference under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1984). See Texport Oil Co. v. United States, 185 F.3d 1291, 1294 (Fed. Cir. 1999) (refusing to extend Chevron deference where the agency had not advanced a position on the issue). Apparently recognizing this, the government does not urge Chevron deference on appeal.

[8] 19 U.S.C. § 3512(d) provides that the SAA "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." We have recognized the authority of the SAA. See Co-Steel Raritan, Inc. v. Int'l Trade Comm'n, 357 F.3d 1294, 1309 (Fed. Cir. 2004).

103-316 (I) at 874 (1994), <u>reprinted in</u> 1994 U.S.C.C.A.N. 3773, 4040.  The government

points to the following statement in the SAA:

> The Administration is aware of prior complaints regarding delays in the completion of administrative reviews and the liquidation of entries, and intends to do its utmost to ensure that Commerce and Customs are able to comply with the deadlines established by the bill.  At the same time, however, it is not the Administration's intent to sacrifice the accuracy of results and fairness to the parties involved for the sake of speed.

1994 U.S.C.C.A.N. at 4202.  According to the government, this statement indicates

Congress' intent to allow Commerce sufficient time to accurately translate the final

results of an administrative review into workable liquidation instructions.  Thus, the

government argues, for entries covered by section 1675(a)(3)(B), Congress chose not

to impose a specific time period for the issuance of liquidation instructions.

ITC responds that the March 1994 entry was never subject to the provisions of

section 1675(a)(3)(B) because, by its terms, the section only comes into play after

Commerce has ordered the liquidation of entries subject to an administrative review.

Thus, according to ITC, by the time Commerce ordered liquidation of the March 1994

entry on July 1, 1997, the entry was already deemed liquidated pursuant to section

1504(d) on April 30, 1997.  ITC further argues that even if the March 1994 entry were

subject to section 1675(a)(3)(B), the entry would not be removed from the discipline of

deemed liquidation under section 1504(d).  According to ITC, Congress' placement of

the "[e]xcept as provided" clause only in the first sentence of section 1504(d) indicates

Congress' intent that deemed liquidation apply to "any entry," including an entry covered

by the clause in the first sentence.  ITC argues that the "except as provided" clause in

the first sentence of section 1504(d) is not rendered meaningless under this

interpretation because the proviso serves to reference the requirement for prompt liquidation, the urging that the liquidation be within 90 days of when instructions are issued to Commerce, and the right to an explanation created by Congress in section 1675(a)(3)(B).

We are not persuaded that either the "[e]xcept as provided" clause in the first sentence of section 1504(d) or the language of section 1675(a)(3)(B) changes the result compelled by International Trading II.  We thus agree with the Court of International Trade that the phrase "[a]ny entry," appearing in the second sentence of section 1504(d), refers to all entries, including entries suspended on account of an administrative review (the class of entries to which the proviso in the first sentence of section 1504(d) referring to section 1675(a)(3) applies).  At the same time, we do not agree with the government that the Court of International Trade's reading of "any entry" in the second sentence of section 1504(d) renders the proviso in the first sentence meaningless.  The reason is that the proviso works to reference the additional requirement, created by Congress in section 1675(a)(3)(B), that if Commerce orders a liquidation of entries pursuant to an administrative review, Customs should liquidate the entries "promptly and, to the greatest extent practicable, within 90 days after the instructions are issued."  It is true that in section 1675(a)(3)(B) Congress did not impose a time limit on Customs with respect to a liquidation that has been ordered.  However, it was unnecessary for Congress to do so because entries subject to section 1675(a)(3)(B) still would be covered by the six-month deemed liquidation language of section 1504(d).  In this case, Customs failed to liquidate the March 1994 shop towel entry until more than six months after Commerce's publication of the final results of the

third administrative review. Thus, by the time Customs liquidated the entry on September 26, 1997, it was already deemed liquidated pursuant to section 1504(d).

Moreover, as noted, one of the primary objectives of the 1993 amendment to section 1504(d) was to remove the government's unilateral ability to extend the time for liquidating entries indefinitely. The purpose, in turn, of the 1994 amendment to section 1504(d) was to conform the administrative review statute more closely to the Antidumping Agreement's time limits for the refund of duties. The implementing legislation described the 1994 change to section 1504(d) as a conforming amendment. Thus, the SAA explains that "Section 220(c) makes conforming changes to Section 504 of the Tariff Act of 1930, a provision which establishes general rules regarding the liquidation of customs entries." 1994 U.S.C.C.A.N. at 4202 (emphasis added). We think it unlikely that Congress would have undone the primary objective of the 1993 amendment to section 1504(d) by removing time limits already present in the law, without any indication in the legislative history that such a substantive change was being made.

The SAA comment relied upon by the government, that "it is not the Administration's intent to sacrifice the accuracy of results and fairness to the parties involved for the sake of speed," fails to mention any change to existing law with respect to the deemed liquidation requirement of section 1504(d). We think this comment is most reasonably interpreted as indicating that liquidation should occur to the greatest extent practicable within the ninety-day period set forth in new section 1675(a)(3)(B), not as indicating that entries subject to administrative review are exempt from the requirement of deemed liquidation.

CONCLUSION

For the foregoing reasons, we agree with the Court of International Trade that the period for deemed liquidation pursuant to section 1504(d) was not triggered when Customs received liquidation instructions from Commerce on July 1, 1997, but rather, was triggered when the final results of the third administrative review covering the entry were published in the Federal Register on October 30, 1996. Accordingly, the subject entry was deemed liquidated under section 1504(d) on April 30, 1997. The decision of the Court of International Trade is therefore affirmed.

COSTS

Each party shall bear its own costs.

AFFIRMED