Slip Op. 09-124

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| MAZAK CORPORATION, | |
| Plaintiff, | Before: Richard W. Goldberg, Senior Judge |
| v. | Court No. 06-00393 |
| UNITED STATES, | |
| Defendant. | |

OPINION

[Plaintiff's partial motion for summary judgment is granted. Defendant's cross-motion for summary judgment is granted in part with regard to its jurisdictional objections and denied in part. Customs shall reliquidate the entries subject to this action.]

Dated: October 29, 2009

Pepper Hamilton, LLP (Gregory Carroll Dorris) for Plaintiff Mazak Corporation.

Michael F. Hertz, Deputy Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office; Saul Davis, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Michael W. Heydrich, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, Of Counsel; Deborah R. King, Attorney-International, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel, for Defendant United States.

**GOLDBERG, Senior Judge:** Plaintiff Mazak Corporation ("Mazak") is contesting the denials of Protest Nos. 3001-06-100270 and 3001-06-100272 by the United States Customs and Border Protection ("Customs"). During the administrative review period

from May 1, 2003 to April 30, 2004, Mazak imported antifriction bearings into the United States that fell within the scope of the antidumping duty order, Antidumping Duty Orders: Ball Bearings, Cylindrical Roller Bearings, and Spherical Plain Bearings, and Parts Thereof from Japan (A-588-804), 54 Fed. Reg. 20,904 (Dep't Commerce May 15, 1989).  Upon importation, Mazak paid the antidumping duty cash deposit rate required by Customs. See 19 U.S.C. § 1505(a) (2006).  Mazak's entries were filed using the antidumping duty case number for Nippon Seiko K. K. ("NSK"), a Japanese company.  At the conclusion of the administrative review period, the U.S. Department of Commerce, International Trade Administration ("Commerce") published an opportunity to request an administrative review of this antidumping duty order in the Federal Register pursuant to 19 C.F.R. § 351.213(b) (2002). Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation: Opportunity to Request Administrative Review, 69 Fed. Reg. 24,117 (Dep't Commerce May 3, 2004).  Pursuant to the requests received, Commerce initiated a review of several companies. Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 69 Fed. Reg. 39,409 (Dep't Commerce June 30, 2004) ("Notice of Initiation of Review").

Commerce instructed Customs to suspend all entries for companies under review until further notice.  Pursuant to these

instructions, Customs suspended liquidation for entries identified as NSK merchandise, which included Mazak's entries. Commerce published its final results of the administrative review on September 16, 2005. Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom: Final Results of Antidumping Duty Administrative Reviews, 70 Fed. Reg. 54,711 (Dep't Commerce Sept. 16, 2005) ("Final Results").  On October 21, 2005, Commerce published an amendment to the Final Results. Notice of Amended Final Results of Antidumping Duty Administrative Reviews: Ball Bearings and Parts Thereof from Japan, 70 Fed. Reg. 61,252 (Dep't Commerce Oct. 21, 2005) ("Amended Results").  Commerce issued a correction to the Amended Results on November 15, 2005. Notice of Correction to Amended Final Results of Antidumping Duty Administrative Review: Ball Bearings and Parts Thereof from Japan, 70 Fed. Reg. 69,316 (Dep't Commerce Nov. 15, 2005).

Upon conclusion of the review, Commerce instructed Customs to liquidate entries at the assessed rates calculated during the administrative review. See 19 C.F.R. § 351.212(b)(1) (2009).  On March 31, 2006 and April 7, 2006, Customs liquidated Mazak's entries at the higher "all-others" antidumping duty rate in accordance with the instructions issued by Commerce; Mazak paid the amounts requested.  It filed the protests in question in this case on June 30, 2006.  Customs denied both protests and

Mazak proceeded to commence action in this Court.  Following discovery, Mazak filed a motion for partial summary judgment. The Defendant filed a cross-motion for summary judgment.

Once a statutory or court-ordered suspension is removed, Customs must liquidate any entries within six months "after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry." 19 U.S.C. § 1504(d) (2006).  Any entry not liquidated within the requisite six-month period shall be deemed liquidated at the amount originally asserted by the importer at the time of entry. Id.  The issue at bar is exactly what event constituted the "notice of the removal" by Commerce triggering the six-month liquidation time clock to commence.  Mazak states that no review was specifically requested of it or of its parent company Yamazaki Mazak Trading Company ("Yamazaki Mazak"), the reseller from which Mazak imported the antifriction bearings.  Because of this fact, Mazak contends that the review did not pertain to it and Customs should have liquidated Mazak's entries within six months of the publication of the Notice of Initiation of Review; that is by December 30, 2004.  In the alternative, Mazak argues that the publication date of Commerce's Final Results, and not that of the Amended Results, began the ticking of the six-month clock.  According to this argument, the entries should have been liquidated by March 16, 2006.  The entries were actually

liquidated on March 31, 2006 and April 7, 2006, outside of this proposed six-month window. The Defendant (or "the Government") claims that the six-month liquidation period may not begin until the issuance of the Amended Results, which occurred on October 21, 2005 and would extend the six-month period until April 21, 2006.

Because of the reasons articulated below, this court finds that the publication date of the Final Results, and not that of the Amended Results, dictated the commencement of the statutory six-month liquidation period. The liquidation period in this case concluded on March 16, 2006. Mazak's entries were thus liquidated too late and are deemed liquidated by operation of law at the cash deposit rate.

The Defendant filed a cross-motion for summary judgment arguing a jurisdictional defect as to certain entries included in Protest No. 3001-06-100270. The Defendant argues that the protest was not timely filed. As discussed further below, the timeliness of both protests creates a jurisdictional bar as to any entry liquidated on March 31, 2006. With respect to those entries, the Court severs and dismisses the claims for lack of jurisdiction.

### I.   **JURISDICTION AND STANDARD OF REVIEW**

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1581(a) (2006) for the contest of the denial of protests filed under Section 515 of the Tariff Act of 1930.

Summary judgment is appropriate if no genuine issues of material fact exist. USCIT R. 56(c).  The moving party bears the burden of demonstrating the absence of any issues of material fact. Celotex Corp. v. Cattret, 477 U.S. 317, 323 (1986).  The non-moving party is "entitled to have both the evidence viewed in the light most favorable to it and all doubts resolved in its favor." Guess? Inc. v. United States, 944 F.2d 855, 858 (Fed. Cir. 1991).  To successfully oppose a motion for summary judgment, the non-movant must raise a genuine issue of material fact. Heng Ngai Jewelry, Inc. v. United States, 28 CIT 423, 426, 318 F. Supp. 2d 1291, 1294 (2004).  "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Allied International v. United States, 16 CIT 545, 548, 795 F.Supp. 449, 451 (1992) (quoting 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2725 at 93-95 (2d ed.1983)).

### II.   **DISCUSSION**

#### A. Jurisdictional Claims

This court must first resolve any jurisdictional issues before addressing the substantive claims of the parties.  This

case involves 20 entries made through the port of Tacoma, Washington between May 30, 2003 and April 25, 2004, and 10 entries made through the port of Seattle, Washington between May 13, 2003 and January 8, 2004.[1]  The entries were liquidated on March 31, 2006 and April 7, 2006.  According to the handwritten "Date Received" on Protest Nos. 3001-06-100270 (port of Tacoma) and 3001-06-100272 (port of Seattle), the protests in question were filed on June 30, 2006.

In its cross-motion for summary judgment, the Defendant argues that Protest No. 3001-06-100270 with respect to entries liquidated on March 31, 2006 was not timely filed because it was received outside the 90-day deadline. See 19 U.S.C. § 1514(c)(3) (2000).[2]  On this point, the court agrees.  Any protest for the entries liquidated on March 31, 2006 should have been filed by June 29, 2006, making the filing of Protest No. 3001-06-100270 one day late with respect to these entries.

---

[1] The entries included in Protest No. 3001-06-100270 from the port of Tacoma are: 004-9170247-8, 004-9177980-7, 004-9194805-5, 004-9200641-6, 004-9231831-6, 004-9261606-5, 004-9296072-9, 004-9302418-6, 004-9315014-8, 004-9336432-7, 004-9359708-2, 004-9368734-7, 004-9375832-0, 004-9380446-2, 004-9385790-8, 004-9411823-5, 004-9421209-5, 004-9421800-1, 004-9435415-2, and 004-9436728-7.  The entries included in Protest No. 3001-06-100272 from the port of Seattle are: 004-9151860-1, 004-9168563-2, 004-9184066-6, 004-9224728-3, 004-9238211-4, 004-9249490-1, 004-9288467-1, 004-9325386-8, 004-9339815-0, and 004-9360307-0.

[2] Congress amended 19 U.S.C. § 1514(c)(3) in 2004 lengthening the protest period to 180 days. Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. No. 108-429, § 2103(2)(B), 118 Stat. 2434, 2597-98 (2004). The amendment to § 1514(c)(3) applies to merchandise entered on or after December 18, 2004. Id. at § 2108.  Because Mazak's entries occurred on and prior to April 25, 2004, the 90-day protest period remains applicable to the entries in question.

In its motion, the Defendant stated its withdrawal of any jurisdictional objection as to Entry Nos. 004-9168563-2, 004-9184066-6, 004-9224728-3, 004-9249490-1, 004-9288467-1, 004-9325386-8, and 004-9360307-0.  These are the entries included in Protest No. 3001-06-100272 from the port of Seattle liquidated on March 31, 2006.  Because of the Defendant's withdrawal of its jurisdictional objection to these entries, Mazak requests that the court include these entries in any relief granted in its favor.

It is unclear to the court why the Defendant finds no jurisdictional issue with regard to the entries included in Protest No. 3001-06-100272 liquidated on March 31, 2006, but retains its objection to those entries included in Protest No. 3001-06-100270 also liquidated on March 31, 2006.  Based on the record evidence, the two protests were filed on the same day, June 30, 2006.  The terms by which the United States consents to be sued define a court's jurisdiction over a particular suit. Lehman v. Nakshian, 453 U.S. 156, 160 (1981).  "[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." Id. at 161 (quoting Soriano v. United States, 352 U.S. 270, 276 (1957)).

The Plaintiff has the burden of establishing jurisdiction when it is challenged. Rollerblade, Inc. v. United States, 20

CIT 117, 118 n.5, 968 F.Supp. 726, 728 n.5 (1996).  Mazak has

brought forth no legal or factual reason to establish

jurisdiction with regards to those entries liquidated on March

31, 2006 included in Protest No. 3001-06-100272.  There is no

reason why only one set of entries liquidated on March 31, 2006

would be jurisdictionally barred, and the other would not.

Thus, with respect to any entry liquidated on March 31, 2006,

this Court does not have jurisdiction.  The Defendant's

withdrawal of its jurisdictional objection as to certain entries

does not change this fact.  Therefore, the claims with regard to

Entry Nos. 004-9168563-2, 004-9184066-6, 004-9224728-3, 004-

9249490-1, 004-9288467-1,004-9325386-8, 004-9360307-0, 004-

9170247-8, 004-9177980-7, 004-9194805-5, 004-9200641-6, 004-

9231831-6, 004-9296072-9, 004-9359708-2, 004-9368734-7, 004-

9375832-0, 004-9380446-2, 004-9385790-8, 004-9421800-1, 004-

9435415-2, and 004-9436728-7 are severed and dismissed for lack

of jurisdiction.  The claims with regard to the remaining

entries liquidated on April 7, 2006 may proceed as timely filed.

B. The Appropriate Trigger for the Six-Month Liquidation

   Timeline Under 19 U.S.C. § 1504(d)

"[W]hen a suspension required by statute or court order is

removed, the Customs Service shall liquidate the entry…within 6

months after receiving notice of the removal from the Department

of Commerce, other agency, or a court with jurisdiction over the

entry." 19 U.S.C. § 1504(d) (2006).  Any entry not liquidated within six months is "treated as having been liquidated at the rate of duty, value, quantity, and amount of duty asserted by the importer of record." Id.  At issue in this case is exactly what action is considered "notice of the removal" triggering the six-month liquidation period.  Mazak contends that Customs did not liquidate its entries within the statutory six-month period, and therefore, the automatic duty amount is the cash deposit rate it provided upon the original entry.

### i. The Six-Month Liquidation Period Was Not Triggered by the *Notice of Initiation of Review*

Mazak first argues that, for its purposes, Commerce's Notice of Initiation of Review, 69 Fed. Reg. 39,409, published in the Federal Register on June 30, 2004 should have triggered the six-month period, thus requiring liquidation by December 30, 2004.

An antidumping administrative review may be requested by an interested party, an exporter or producer covered by the antidumping order, or an importer of the subject merchandise. 19 C.F.R. § 351.213(b)(1)-(3).  Liquidation of entries that could be affected by the review may be suspended pending the results of the review.  If no review is requested, automatic assessment

occurs. 19 C.F.R. § 351.212(c).  With respect to "resellers,"[3] Commerce has maintained, and clarified, a slightly different policy. Antidumping and Countervailing Duty Proceedings: Assessment of Antidumping Duties, 68 Fed. Reg. 23,954 (Dep't Commerce May 6, 2003) ("Reseller Policy").  Automatic liquidation does not apply to a reseller's merchandise if an administrative review has been requested of the reseller "or of any producer of merchandise the reseller exported to the United States." Id. at 23,954.  Liquidation is suspended pending the review. Id.  Should it be determined that the producer knew, or should have known, that its merchandise was destined for the United States via the reseller, the producer's assessment rate is applied to the reseller. Id.  If the producer did not know, the reseller's merchandise is assessed at the all-others rate, if there was no specific review of the reseller for that review period. Id.

During the administrative review period, Mazak imported antifriction bearings from its parent company Yamazaki Mazak. At the end of the review period, Commerce published an opportunity to request an administrative review of the

---

[3] The term "reseller" applies to "any intermediary that could be an interested party as defined in section 771(9)(A) of the Tariff Act of 1930, as amended." Antidumping and Countervailing Duty Proceedings: Assessment of Antidumping Duties, 68 Fed. Reg. 23,954, 23,954 (Dep't Commerce May 6, 2003). "Interested party" as codified from the Tariff Act of 1930 includes, among others, "a foreign manufacturer, producer, or exporter, or the United States importer, of subject merchandise or a trade or business association a majority of the members of which are producers, exporters, or importers of such merchandise." 19 U.S.C. § 1677(9)(A).

applicable antidumping order. 69 Fed. Reg. 24,117.  Since no review was specifically requested of either Mazak, as the importer, or its parent company Yamazaki Mazak, as the exporter, Mazak contends that it was exempt from the review initiated on June 30, 2004.  The commencement of the review thus, according to Mazak, constituted a "notice of the removal" of suspension as to its entries under 19 U.S.C. § 1504(d), and started the six-month liquidation clock ticking.  However, simply because no review was specifically requested of Mazak or Yamazaki Mazak does not end the inquiry into whether the administrative review pertained to the Plaintiff.

Upon importation, Mazak provided NSK's antidumping duty case number, identifying its merchandise as NSK products, and entered the subject bearings at NSK's cash deposit rate.  This rate was lower than the all-others rate at which the entries were eventually liquidated.  A review was requested of NSK "and all other affiliated companies selling subject merchandise in Japan and/or to or in the United States." Letter from Stewart and Stewart, Counsel for Timken US Corporation to James J. Jochum, Assistant Secretary for Import Administration, International Trade Administration, U.S. Department of Commerce, "Timken US Corporation's Request for An Administrative Review" (May 28, 2004).  Pursuant to the requested review, Commerce's instructions to Customs stated that firms for which Customs

should suspend liquidation "can be manufacturers/producers, exporters, or manufacturers/producer/exporter combinations." Letter from Director, Special Enforcement to Directors of Field Operations Port Directors, "Auto. Liq. Instruct. for Ball Bearings + Parts Thereof-Japan(A-588-201), Except Asahi Seiko, Koyo Seiko, Nachi-Fujikoshi, Nankai Seiko, Nippon Pillow, NSK, NTN, etc.," Message No. 4231204 (Aug. 18, 2004).  Customs was directed to "[c]ontinue to suspend liquidation of all entries of merchandise exported or produced by" NSK, among others. Id.

     Liquidation of Mazak's entries was appropriately suspended at this time because of its identification with NSK. Liquidation of Mazak's entries upon the Notice of Initiation of Review would have been impossible; without the completion of an administrative review by Commerce, Customs could not have known the appropriate antidumping duty rate to apply.  Prior to an investigation, there would be no way of discerning whether NSK was or was not aware that merchandise sold to Yamazaki Mazak, and imported by Mazak, was destined for the United States, pursuant to the Reseller Policy. See Reseller Policy, 68 Fed. Reg. at 23,954.

     Mazak argues, without citing to any authoritative support, that the Reseller Policy does not apply to it because there is a distinction between a review requested for a "producer" of merchandise and that of an "exporter" of merchandise.  According

to Mazak, the language of Timken's petition for review—
requesting review of "NSK," among others, and "all other
affiliated companies selling subject merchandise in Japan and/or
to or in the United States"—indicated that this was an exporter
review, as opposed to a producer review.  The distinction,
states Mazak, is that the review does not cover all merchandise
produced by NSK, which is what Mazak was importing, but rather
only certain affiliated companies that export NSK merchandise,
which does not include Mazak or Yamazaki Mazak because they are
not affiliates of NSK.  Support for this argument purportedly
stems from the distinction made between producers and exporters
in the Reseller Policy.  Mazak emphasizes that the Reseller
Policy repeatedly refers to resellers (exporters) or producers,
or to producers alone.[4]

     However, there is no statutory or regulatory
differentiation between reseller/exporter and producer reviews.
See 19 C.F.R. § 351.221.  The Reseller Policy specifically
states that "[t]here need not be nor will there be any special
provisions for administrative reviews of resellers." Reseller
Policy, 68 Fed. Reg. at 23,960.  In addition, Commerce's Office

---

[4] Examples cited by Mazak include, "[A]utomatic liquidation at the cash-deposit
rate required at the time of entry can only apply to a reseller which does
not have its own rate if no administrative review has been requested, either
of the reseller or of any producer of merchandise the reseller exported to
the United States." Reseller Policy, 68 Fed. Reg. at 23,954.  And, "[I]f the
producer has no knowledge of a reseller's U.S. transactions, use of the
producer's rate for final duty assessment, where a review of the producer has
been requested, is not appropriate because it does not reflect the reseller's
pricing practices." Id. at 23,961.

Director of AD/CVD Enforcement 5 confirmed that Commerce makes no distinction between producer reviews and exporter reviews, and reviews a company's sales to the United States regardless of whether the company is a producer or exporter. Laurie Parkhill Declaration at ¶ 13.  Mazak seems to hinge its distinction on unimportant semantics.

In this argument, Mazak also fails to note that there was more than one request for review.  NSK specifically requested its own review of "ball bearings manufactured by or for NSK Ltd. in Japan and exported to the United States for the 2003-2004 period of review." Letter from Crowell Moring, Counsel for NSK Ltd., NSK Corporation and NSK Precision America, Inc. to James J. Jochum, Assistant Secretary for Import Administration, International Trade Administration, U.S. Department of Commerce, "Ball Bearings and Parts Thereof from Japan: Request for 2003-2004 Administrative Review on Behalf of NSK Ltd., NSK Corporation and NSK Precision America, Inc." (May 25, 2004). NSK's request directly implicates the merchandise imported by Mazak because it was "manufactured by or for NSK Ltd."

It is illogical for Mazak to have identified its merchandise through NSK case numbers, taken advantage of its lower cash deposit rate, and then argue that a review of NSK merchandise is inapplicable to it.  NSK's merchandise was reviewed in this administrative review; Mazak indicated that it

sold NSK merchandise.  Mazak's entries were thus subject to this administrative review.  The Notice of Initiation of Review did not trigger the six-month liquidation clock for Customs.  On this point, Mazak's argument fails.

> ii. Commerce's *Final Results*, and Not the *Amended Results*, are the Appropriate Six-Month Trigger

Because the court finds that Mazak's entries were covered by the administrative review, this court must now determine what serves as the appropriate "notice of the removal" triggering the six-month liquidation period.  See 19 U.S.C. § 1504(d).  It is undisputed that the Federal Circuit previously determined that Commerce's publication of the final results of an administrative review, and not Commerce's liquidation instructions to Customs, serves as a notice of removal to Customs and begin the six-month liquidation period.  Int'l Trading Co. v. United States, 412 F.3d 1303 (Fed. Cir. 2005) ("International Trading II"); Int'l Trading Co. v. United States, 281 F.3d 1268 (Fed. Cir. 2002) ("International Trading I").  However, the Defendant contends that when applicable amended results are published, that publication date resets the six-month clock.

In this case, Commerce published the Final Results on September 16, 2005. 70 Fed. Reg. 54,711.  The Amended Results were published on October 21, 2005. 70 Fed. Reg. 61,252.  Commerce published a Notice of Correction to the Amended Results

on November 15, 2005. 70 Fed. Reg. 69,316.  Because the antidumping duty rate for NSK was revised in the Amended Results, and Mazak entered their goods under the NSK antidumping duty order case number, the Defendant contends that the Amended Results impact Mazak.  The Defendant argues that the Amended Results, therefore, should dictate the beginning of the six-month liquidation period, which ended on April 21, 2006.  Should this date be determinative, the liquidations of Mazak's entries that occurred on March 31, 2006 and April 7, 2006 would fall within the statutory six-month period.

Before 19 U.S.C. § 1504 was enacted in 1978, there were no statutory restrictions on the length of time for liquidation of an entry by Customs. International Trading I, 281 F.3d at 1272; St. Paul Fire & Marine Ins. Co. v. United States, 6 F.3d 763, 767 (Fed. Cir. 1993).  "Customs could delay liquidation as long as it pleased, with or without giving notice." Int'l Cargo & Surety Ins. Co. v. United States, 15 CIT 541, 543, 779 F.Supp. 174, 177 (1991).  Congress' purpose in adding the time restriction was to "increase certainty in the customs process for importers, surety companies, and other third parties with a potential liability relating to a customs transaction." S. Rep. No. 95-778, at 32, as reprinted in, 1978 U.S.C.C.A.N. 2211, 2243.  In 1993, the time period for liquidation was revised to six months. H.R. Rep. No. 103-361, pt. 1, at 139 (1993).

The Defendant is correct that International Trading I and International Trading II did not address the exact issue at bar. In those cases, the Federal Circuit dismissed the idea that the removal of suspension would only occur upon Commerce's issuance of liquidation instructions to Customs. International Trading II, 412 F.3d at 1313; International Trading I, 281 F.3d at 1274. The Court held that it was the publication of Commerce's final results of an administrative review that served as the notice of removal of suspension and began the six-month liquidation period. International Trading II, 412 F.3d at 1313; International Trading I, 281 F.3d at 1274. These cases did not discuss the distinction between the final results and any issued amended results in initiating the six-month liquidation period.

However, in choosing the final results rather than Commerce's instructions to Customs as the initiation point, the Court in International Trading I emphasized that the principal objective of the statutory time limit on liquidation is to avoid "giving the government the unilateral ability to extend the time for liquidating entries indefinitely." Id. at 1273. Allowing Commerce the unfettered ability to issue its instructions to Customs at will would have undermined this very principle. Id. The Federal Circuit was also conscious of providing "an unambiguous and public starting point for the six-month liquidation period." Id. at 1275.

Here, the Defendant claims that the Amended Results must dictate the beginning of the liquidation period because Customs would not be able to calculate what duty to assess Mazak until the Amended Results were issued.  This argument falls flat.  In this case, the applicable antidumping duty rate was determined for Mazak by the issuance of the Final Results and did not change under the Amended Results.  Therefore, designating the publication date of the Final Results as the beginning of the six-month liquidation period provides the interested parties with an appropriate and unambiguous start date because here the Amended Results did not impact Mazak.

As dictated by Commerce's Reseller Policy, the reseller's merchandise is either assessed at the producer's rate or at the all-others rate. Reseller Policy, 68 Fed. Reg. at 23,954.  The producer's rate is used if Commerce determines that "the producer knew, or should have known that the merchandise it sold to the reseller was destined for the United States." Id.  If it is determined that the producer did not know, then the all-others rate is applied to the reseller. Id.

By the conclusion of the Final Results, Commerce had determined that the all-others rate applied to Mazak. See Final Results 70 Fed. Reg. at 54,713.  Pursuant to the Reseller Policy, Commerce assigns the appropriate rate—the producer's rate or the all-others rate—based on information revealed "in

the course of the administrative review." Reseller Policy, 68
Fed. Reg. at 23,954.  Information pertaining to any amended
results would not modify the analysis of whether a producer was
or was not aware of the destination of the particular
merchandise in question because amended results generally only
resolve ministerial errors.[5] See DuPont Teijin Films USA, LP v.
U.S., 28 CIT 896, 900-01 n.8 (2004); 19 C.F.R. § 351.224(e).
Ministerial errors are solely "error[s] in addition,
subtraction, or other arithmetic function, clerical error[s]
resulting from inaccurate copying, duplication, or the like, and
any other similar type of unintentional error which the
Secretary considers ministerial." 19 C.F.R. § 351.224(f).
Therefore, the Amended Results could not have reevaluated which
rate, NSK's rate or the all-others rate, was to be assigned to
Mazak, as the Defendant argues; it could only mathematically
adjust a particular rate.  In fact, in the Amended Results,
Commerce rejected a particular allegation brought by another
company explaining that it was "not ministerial in nature as
defined by 19 CFR § 351.225(f)." Amended Results, 70 Fed. Reg.
at 61,252.

Regarding NSK's rate, the Amended Results corrected an
error regarding NSK's level of trade for certain home-market

---

[5] There are two other very narrow circumstances in which amended results may
be issued. See DuPont Teijin Films USA, LP v. U.S., 28 CIT 896, 900-01 n.8
(2004).  Neither party argues that those circumstances apply in this case.

sales, and the rate was recalculated accordingly.[6] Id.  Mazak was assigned the all-others rate, which was neither discussed nor changed in the Amended Results. See id.  The Defendant's argument that the Amended Results impacted Mazak's antidumping duty rate is thus ill directed, as the all-others rate remained unaltered.

Because the Amended Results did not change the Plaintiff's rate, commencing the statutory six-month liquidation period on the publication date of the Final Results provides a clear and unequivocal framework for Customs and the importer.  When the Amended Results do not impact the entries in question, relying on the date of the Amended Results would permit Commerce the ability to "reset" the commencement of the six-month liquidation period arbitrarily.  This would indicate that any issued amended results could potentially reset the six-month liquidation period for any producer, exporter, or importer covered by the review regardless of its impact on that particular producer, exporter, or importer.  Comparatively, initiating the liquidation period on the Final Results publication date provides interested parties with the necessary certainty and unambiguity emphasized by Congress and the Federal Circuit.

---

[6] The Amended Results also acknowledged and corrected a ministerial error for the rate of another company, Nippon Pillow Block Co., Ltd. Amended Results, 70 Fed. Reg. at 61,252.  Two other companies also alleged ministerial errors. Id.  One allegation was rejected by Commerce and the other was found to be accurate, but did not affect the rate calculation. Id.

The Final Results were published on September 16, 2005. The six-month liquidation period therefore ended on March 16, 2006. The liquidation of Mazak's merchandise encompassed in Protest Nos. 3001-06-100270 and 3001-06-100272 occurred on March 31, 2006 and April 7, 2006, after the end of the six-month liquidation period. Therefore, those entries liquidated on April 7, 2006, i.e., those this Court may exercise jurisdiction over, are deemed liquidated at the cash deposit rate pursuant to 19 U.S.C. § 1504(d).

### III. **CONCLUSION**

Because Mazak's protests were untimely filed with respect to those entries liquidated on March 31, 2006, this Court does not have jurisdiction over these claims. With respect to Entry Nos. 004-9170247-8, 004-9177980-7, 004-9194805-5, 004-9200641-6, 004-9231831-6, 004-9296072-9, 004-9359708-2, 004-9368734-7, 004-9375832-0, 004-9380446-2, 004-9385790-8, 004-9421800-1, 004-9435415-2, and 004-9436728-7 included in Protest No. 3001-06-100270, and Entry Nos. 004-9168563-2, 004-9184066-6, 004-9224728-3, 004-9249490-1, 004-9288467-1, 004-9325386-8, and 004-9360307-0 included in Protest No. 3001-06-100272, Defendant's cross-motion for summary judgment is granted in part and the claims are severed and dismissed as to these entries for lack of jurisdiction.

As to the remaining entries, those liquidated on April 7, 2006, Entry Nos. 004-9261606-5, 004-9302418-6, 004-9315014-8, 004-9336432-7, 004-9411823-5, and 004-9421209-5 included in Protest No. 3001-06-100270, and Entry Nos. 004-9151860-1, 004-9238211-4, and 004-9339815-0 included in Protest No 3001-06-100272, the court finds that they were not liquidated within the statutorily required six-month liquidation period and are deemed liquidated at the importer's cash deposit rate.  With respect to these entries, Plaintiff's partial motion for summary judgment is granted.  Pursuant to the judgment in this case, Customs shall reliquidate the relevant entries.

/s/ Richard W. Goldberg___
**Richard W. Goldberg**
**Senior Judge**

**Date:**      **October 29, 2009**
             **New York, NY**